UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ALTEMIO GONZALES,**   )<br>                                          )<br>     **Movant,**                )<br>                                          )<br>**vs.**                                )<br>                                          )<br>**THE UNITED STATES OF**  )<br>**AMERICA,**                    )<br>                                          )<br>     **Respondent.**          ) | **Case Numbers:**<br>**CV 11-S-8014-S**<br>**CR 07-S-177-S** |

# MEMORANDUM OPINION

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. § 2255.

## Procedural History

The movant, Altemio Gonzales, was convicted in this court on July 20, 2007, of one count of possession with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). He was sentenced on October 16, 2007, to 240 months in prison to be followed by a 120-month term of supervised release.

On appeal, Gonzales argued:

1) the district court violated his rights under the Sixth Amendment's Confrontation Clause by accepting a stipulation to the identity of the

>    purported cocaine, to which his counsel had agreed, but to which Gonzales himself objected; and
>
> 2) the district court erred in denying his motion to suppress the purported cocaine seized from the tractor-trailer in which he was a passenger, because the combined traffic stop and administrative inspection of the tractor-trailer was unreasonably long and unsupported by reasonable suspicion.

On August 5, 2009, the Eleventh Circuit Court of Appeals affirmed Gonzales' conviction. *United States v. Gonzales*, 342 Fed. App'x 446 (11th Cir. 2009).

In support of his motion to vacate, Gonzales claims that trial counsel was constitutionally ineffective because counsel failed to:

> 1) investigate Officer Gonzalez's and Hoover Police Department's legal relationship with DOT;
>
> 2) object to the due process violation and to challenge planted evidence; and
>
> 3) investigate presiding law and present results to rebut prosecutor's introduction of the invalid and repealed 1998 Alabama Statute 32-9A-3.[1]

In response to the court's order to show cause, the respondent filed an answer in which he argues that the motion to vacate is due to be denied because the claims are without merit.[2]  By order of the court, the parties were advised that the

---

[1] Doc. no. 3 at 6, 14, 20.

[2] Doc. no. 13.

respondent's answer would be treated as a motion for summary dismissal.[3] The movant was advised that in responding to the motion for summary dismissal, he must supply the court with counter affidavits and/or documents to set forth specific facts showing that there are genuine issues of material fact to be decided. In response, the movant has filed a traverse.[4]

## ANALYSIS

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant

---

[3] Doc. no. 14.
[4] Doc. no. 16.

3

of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim." *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995) (alterations supplied).

Under the *Strickland* test, the petitioner must initially show that counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'" *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993)(quoting *Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(*en banc*), *cert. denied*, 502 U.S. 835 (1991)).  In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983), *cert. denied*, 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only

if the error caused actual prejudice. *Strickland*, 466 U.S. at 691-92. In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Furthermore, in addition to showing that the outcome would have been different, a petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994)(citing *Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993)). "In other words, a 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.'" *Weekley v. Jones*, 56 F.3d 889, 897 (8th Cir. 1995) (quoting *Fretwell*, 113 S. Ct. at 842) (alteration in original). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 113 S. Ct. at 844.

    Gonzales was indicted on one charge of possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of

cocaine hydrochloride.[5]  The cocaine was found during a traffic stop, in an 18-wheeler truck in which Gonzales was a passenger.[6]  Gonzales and his co-defendant filed motions to suppress the search of the truck.[7]  The court conducted a suppression hearing on June 19, 2007.

**Claim 1. Failure to Investigate Officer Gonzalez's and the Hoover Police Department's Legal Relationship with the Department of Transportation**

During the suppression hearing, Officer Alejandro Gonzalez testified that he is a police officer for the City of Hoover, in the Interstate Criminal Enforcement unit.[8] In describing his training and experience, Officer Gonzalez offered the following:

> I've had over 700 hours of formalized training in criminal interdiction.  I've had -- as far as traffic, I've had 40 hours back in Los Angeles County, when I went through the academy.  Also had an eight-hour block in Georgia where I'm also post-certified in that state. And here in Alabama, the state of Alabama, about four hours of formalized just traffic.
>
> As far as commercial motor vehicles, DOT authority for the Federal Motor Carrier Safety Administration, that's a 40-hour block, and in vehicle -- commercial motor vehicle enforcement.

---

[5] Criminal doc. no. 1.  In this Memorandum Opinion, citations to "Criminal doc. no. __" are to the docket number from the criminal case, 2:07-cr-0177-CLS-JHE.

[6] Criminal doc. no. 32 at 13-23.

[7] Criminal doc. no. 10 and 12.

[8] Criminal doc. no. 32 at 6.

> I've also had over 200 hours of formalized training in criminal interdiction, as far as commercial motor vehicles.
>
> . . .
>
> Over 700 hours of formalized training; over 200 in commercial motor vehicle. I'm also an instructor for the NHTSA, which is the National Highway Traffic Safety Administration. I'm a Georgia post-certified instructor.
>
> Also, I'm an EPIC instructor, which is the El Paso Intelligence Center, which is part of the DEA and Department of Justice. Also, DIAP, which is the Drug Interdiction Assistance Program, and is basically a branch of the Federal Motor Carrier Safety Administration. I've also trained hundreds of local, state and federal agents throughout the country, both in classroom setting, as well as hands-on training.[9]

During the hearing, the court received into evidence Government's Exhibit 1, consisting of certificates issued by the United States Department of Transportation, Federal Motor Carrier Safety Administration, indicating that Officer Gonzalez successfully completed courses in North American Standard Level I and Level III.[10] Gonzalez further testified that the City of Hoover has an agreement with the Department of Transportation pursuant to which the city assumes responsibility for inspecting commercial vehicles, specifically 18-wheelers.[11] Gonzalez inspects the

---

[9] *Id*. at 6-7.

[10] *Id*. at 11-12; Doc. no. 4-1 at 8-9.

[11] Criminal doc. no. 32 at 42.

trucks under the authority of Ala. Code § 32-9A-3.[12]  He explained that under the statute:

> After you've gone through the training, the Director of Alabama Department of Public Safety authorizes us to do an inspection. We can stop a truck for no violations, solely to inspect the truck. And also we can go to place of business - - which in this case when a truck is moving, that's his place of business - - to inspect his paperwork, his safety equipment.[13]

Gonzales claims that "strange indicators showed that Officer Gonzalez lacked DOT-Qualifications," so he advised counsel at their first jailhouse meeting and during the suppression hearing that he needed to investigate Officer Gonzalez' DOT qualifications and whether the City of Hoover had an agreement with the DOT to inspect 18-wheelers.[14]  Gonzales claims that despite his warnings, counsel agreed to let Officer Gonzalez testify at the suppression hearing, conceding that Officer Gonzalez was qualified to testify as an expert.[15]  Gonzales contends that after he was convicted, he learned that Officer Gonzalez was not DOT qualified and should not have been allowed to testify as an expert.[16]  He alleges that if counsel had pursued the issue of Officer Gonzalez' qualifications, he would have learned that Officer

---

[12] *Id*. at 63.
[13] *Id*. at 64.
[14] Doc. no. 3 at 6-13.
[15] *Id*. at 7.
[16] *Id*. at 6-13.

8

Gonzalez was "criminally impersonating a Federal DOT-Official during the stop and during Petitioner's Suppression Hearing with both false statements and counterfeited DOT-Credentials."[17]

In response to this claim, Gonzales' trial attorney, Samuel Ray Holmes, submitted an affidavit[18] in which he states:

> This argument is false and without merit. On June 19, 2007, this Honorable Court, held a hearing as to Defendant's Motion to Suppress, United States District Judge U. W. Clemon presiding. During this hearing, Counsel specifically elicited testimony as to the Hoover Police Department's certification and ability to conduct Department of Transportation inspections. The Honorable U. W. Clemon at the conclusion of the hearing found that there were no grounds for suppression of the evidence.[19]

According to Gonzales, prior to and during the suppression hearing, he told counsel he was suspicious that Officer Gonzalez was not DOT-certified and requested that he investigate his credentials. However, at the hearing, the government presented certificates confirming that Officer Gonzalez was in fact certified by the DOT. Regardless of whether Gonzales has since learned that the certificates presented by

---

[17] *Id*. at 13.

[18] Gonzales argues that Mr. Holmes' affidavit should be stricken because it did not contain the words "true and correct under penalty of perjury," as required by 28 U.S.C. § 1746. Doc. 16 at 9. However, Mr. Holmes' affidavit is sufficient because it is properly notarized.

[19] Doc. no. 13-2 at 1.

Officer Gonzalez were fraudulent,[20] prior to his conviction, there was nothing more than the movant's suspicion upon which counsel could have mounted a challenge to Officer Gonzalez' credentials. It was not unreasonable for counsel to accept as valid, the certificates offered by the government, showing Officer Gonzalez' training and experience. This claim is due to be DENIED.

**Claim 2. Failure to Object to Due Process Violations during Suppression Hearing**

Gonzales claims that counsel was ineffective for failing to object to due process violations that occurred during the suppression hearing.[21] Gonzales alleges that his due process rights were violated by the prosecution's failure to discover that Officer Gonzalez had fabricated and presented counterfeit DOT certificates and lied about his qualifications;[22] the prosecution's use of an "ex-bomb sniffing dog to attempt to establish 'probable cause' after the fact that the unauthorized inspection was completed and concluded";[23] and the prosecution's use of "planted" evidence and photographs of that evidence "for the sole purpose of deceiving the Court and Jury."[24]

---

[20] The court offers no opinion as to whether Officer Gonzalez' credentials were or are legitimate or not.

[21] Doc. no. 3 at 14.

[22] *Id*. at 16.

[23] *Id.* at 19.

[24] *Id*. at 17-19.

Gonzales further alleges that his attorney was ineffective for stipulating "with the Government that an independent drug analysis was not necessary," despite his protests.[25]

Gonzales first claims that his attorney was ineffective for failing to object to the prosecution's failure to discover that Officer Gonzalez had fabricated and presented counterfeit DOT certificates and lied about his qualifications.[26] However, even assuming that Officer Gonzalez fabricated his DOT certificates and lied about his qualifications, there is nothing to indicate that the prosecution knew this during the suppression hearing or that counsel had any reason to know Officer Gonzalez' credentials were false or that the prosecution knew or should have known they were false. Thus, counsel was not deficient for failing to raise such an objection. This claim is due to be DENIED.

Gonzales next claims that counsel was ineffective for failing to object to the prosecution's use of an "ex-bomb sniffing dog to attempt to establish 'probable cause' after the fact that the unauthorized inspection was completed and concluded."[27] He argues that once a dog has been trained as a bomb dog, she cannot later be trained

---

[25] *Id*. at 19-20.
[26] *Id*. at 16.
[27] *Id*. at 19.

as a narcotics dog.[28]  Deputy Sheriff Tim Sanford, a K-9 handler, testified at the suppression hearing that his narcotics dog, Tika, was used to search the 18-wheeler in which the cocaine was found.[29]  The evidence established that Tika was a trained narcotics dog.[30]  There is nothing in the record to indicate that Tika was ever trained as a bomb dog.  Thus, counsel was not deficient in failing to raise a baseless objection.  This claim is due to be DENIED.

Gonzales asserts that counsel was ineffective for failing to object to the prosecution's use of "planted" evidence and photographs of that evidence "for the sole purpose of deceiving the Court and Jury."[31]  The movant claims that the prosecution used photographs of "planted" air fresheners to make it appear that he was trying to cover up the odor of drugs.[32]  He further claims that the drugs were planted because Officer Gonzalez testified that the drugs were found in one bag that was "almost black," yet Government's Exhibits 30 and 31 clearly show two different bags, one silver and one black.[33]  He adds that "even more condemning against Officer Gonzalez is that on the video of the arrest, two men in CIVILIAN clothing

---

[28] *Id.*

[29] Criminal doc. no. 32 at 72-75.

[30] *Id.* at 69-72.

[31] *Id.* at 17-19.

[32] *Id.*

[33] *Id.* at 18.

12

are seen walking TOWARDS the tractor-trailer carrying an 'almost black' bag," yet there is "no recorded evidence showing that the suspected drugs were unloaded from Petitioner's CMV."[34]

Gonzales has offered nothing more than speculation that either the air fresheners or the cocaine were planted in the truck. Officer Gonzalez testified at the suppression hearing and at trial that the photographs of the air fresheners accurately depicted how he saw the air fresheners at the time of the traffic stop.[35]

Officer Gonzalez further testified that he found thirty kilo-size packages of cocaine in a closet in the cab of the truck.[36] Officer Gonzalez found the cocaine in a duffel bag he described at the suppression hearing as "gray, almost black,"[37] and at trial as "gray-blackish."[38] The duffel bag was admitted into evidence at trial as Government's Exhibit 17.[39] The government also had Exhibits 40 and 41 admitted at trial.[40] Officer Gonzalez described Exhibits 40, 41, and 42 as being "picture[s] of the bricks of suspected cocaine and duffel bag, air fresheners inside, the duffel bag

---

[34] *Id.*

[35] Criminal doc. no. 32 at 39; Criminal doc. no. 101 at 136. Photographs of the air fresheners were admitted at trial as Government Exhibits 31-39. Criminal doc. no. 101 at 136. Gonzales has submitted copies of Government Exhibits 31-35 as exhibits in this case. Doc. no. 4-2 at 1-7.

[36] Criminal doc. no. 32 at 38; Criminal doc. no. 101 at 113-116.

[37] Criminal doc. no. 32 at 28.

[38] Criminal doc. no. 101 at 113.

[39] Criminal doc. no. 101 at 116.

[40] *Id.* at 137.

as well as one of the kilo packages."[41]

Gonzales has submitted copies of Government Exhibits 40 and 41.[42] He describes Exhibit 40 as showing a silver bag and Exhibit 41 as showing a black bag.[43] Gonzales asserts that Exhibits 40 and 41 show two different bags, neither being the "almost black" duffel bag described by Officer Gonzalez.[44] From this, he reasons that the "almost black" duffel bag must have been planted in his truck by "two men in CIVILIAN clothing . . . seen [on the video of the arrest] walking TOWARDS the tractor-trailer carrying an 'almost black' bag."[45] The photocopies of Government Exhibits 40 and 41 submitted by the movant are unclear at best. However, the court notes that Officer Gonzalez, upon viewing the original photographs at trial, clearly stated that the photographs were a fair and accurate depiction of the cocaine and the duffel bag as he saw them that day.[46]

There is nothing in the record to suggest that counsel had any basis, at the suppression hearing or at trial, to suspect that Government Exhibits 31-35, 17, 40 or 41 were anything other than the fair and accurate depictions of the air fresheners and

---

[41] *Id.*

[42] Doc. no. 4-2 at 6-7.

[43] Doc. no. 3 at 18.

[44] *Id*.

[45] *Id*.

[46] Criminal doc. no. 101 at 137.

the bag of cocaine Gonzalez testified they were. In the absence of any evidence that either the air fresheners or the cocaine were planted in the movant's truck, there was absolutely no basis upon which counsel could or should have made an argument that they were planted. This claim is due to be DENIED.

Gonzales further alleges that his attorney was ineffective for stipulating "with the Government that an independent drug analysis was not necessary," despite his protests.[47] On appeal, Gonzales argued that the "district court violated his rights under the Sixth Amendment by accepting a stipulation to the identity of the purported cocaine, to which his counsel had agreed, but to which Gonzales himself objected." *United States v. Gonzales*, 342 Fed. App'x 446, 447 (11th Cir. 2009). The Eleventh Circuit Court of Appeals held that this court erred in accepting the stipulation. *Id*. at 448. However, the appellate court found that the error was harmless because they were "persuaded that the arresting officer's testimony at trial provided sufficient grounds for a reasonable jury to conclude that the substance was cocaine." *Id*. Because the arresting officer's testimony was sufficient for a reasonable jury to conclude that the substance was cocaine, Gonzales is unable to show that he suffered prejudice from counsel's stipulation to the cocaine, even over his protests. This claim is due to be DENIED.

---

[47] *Id*. at 19-20.

## Claim 3.   Failure to Investigate the Law and Challenge the Validity of Ala. Code § 32-9A-3

Gonzales claims that his attorney "failed to investigate presiding law and present results to rebut [the] prosecutor's introduction of the invalid and repealed 1998 Alabama Statute 32-9A-3" at the suppression hearing.  He alleges that:

> At Petitioner's Suppression Hearing, the Prosecutor asked this Court to take "Judicial Notice" of Alabama Statute, i.e. § 32-9A-3, which had been REPEALED and made INVALID.  This is the Statute which Officer Gonzalez stated to this Court that such Statute granted him the authority to inspect Petitioner's CMV and Business Records (DOT-credentials).  This Court relied on this Statute to deny Petitioner's Suppression Motion.  The Judge at the Suppression Hearing was mislead as to the validity of this ANNULLED law.[48]

Gonzales contends that if counsel had "investigated such, he would have learned that the Prosecution offered BAD LAW via 'Judicial Notice' to the court."[49] For the "benefit" of the court, Gonzales informs the court that "the 11th Circuit found such statute, 32-9A-3, as 'facially unconstitutional'" in the opinion issued on his direct appeal.[50]  However, Gonzales is mistaken.  In the opinion issued on his direct appeal, the court noted in a footnote that "[b]ecause Gonzales did not argue in his brief that § 32-9A-3 is facially unconstitutional, he has abandoned the issue." *United*

---

[48] Doc. no. 3 at 20.

[49] *Id*. at 23.

[50] *Id.* at 23.

*States v. Gonzales*, 342 Fed. App'x 446, 449 n.1 (11th Cir. 2009)(citation omitted). The court did not find that the statute was facially unconstitutional; it simply stated that Gonzales had not raised the constitutionality of the statute in his brief on appeal, so it was not being considered by the court.

Ala. Code § 32-9A-3 is valid. It has never been repealed, made invalid or nullified in any way. Counsel was not deficient for failing to argue at the suppression hearing that the law is invalid. This claim is due to be DENIED.

## CONCLUSION

The motion to vacate is due to be DENIED and DISMISSED. An appropriate order will be entered.

DONE this 28th day of March, 2014.

_____
United States District Judge